ORIGINAL

1  DAVID J. VENDLER, SBN 146528
2  MORRIS, POLICH & PURDY, LLP
   1055 West Seventh Street, 24th Floor
   Los Angeles, California 90017
3  Telephone: (213) 891-9100
   Facsimile: (213) 488-1178
4

5  Attorneys for Plaintiff, ALYSSA POLACSEK,      PJM 04 CV 631
   individually, on behalf of the classes of
6  similarly situated persons, and as a
   representative of the general public

7

8          UNITED STATES DISTRICT COURT IN AND FOR

9             THE CENTRAL DISTRICT OF CALIFORNIA

10

11 ALYSSA POLACSEK, individually, on       Case No.: SACV 03-01003 CJC (CTx)
   behalf of the classes of similarly situated
12 persons and as representative of the
   general public,                         **FIRST AMENDED CLASS ACTION
13                                          AND REPRESENTATIVE
                                            COMPLAINT;
14         Plaintiffs,                      JURY TRIAL DEMAND**

15 vs.

16 DEBTICATED CONSUMER
   COUNSELING, INC., A New York Not
17 For Profit Corporation; DEBTICATED,
   INC., a New York entity, form unknown;
18 INFINITY RESOURCES GROUP, INC.,
19 a Washington D.C. Corporation;
   DEBTWORKS INC., a Maryland
20 Corporation; ERIKS PUKKE, aka Eric
21 Pukke; an individual; ANDRIS PUKKE,
   an individual; and Does 1-100
22
23         Defendants.                      ENTER ON ICMS

                                            AUG 2 2 2003
24

25      NOW COMES ALYSSA POLACSEK ("plaintiff"), who, on behalf of herself and

26 the classes of similarly situated persons both in California and nationally, and on behalf

27 of the general public, makes the following complaint against defendants: DEBTICATED

28 CONSUMER COUNSELING, INC., a New York not for profit corporation;

DJV1097.DOC                              1

**FIRST AMENDED CLASS ACTION AND REPRESENTATIVE COMPLAINT**

1  DEBTICATED, INC., which plaintiff alleges on information and belief is either a New

2  York entity of form unknown, or is a name under which DEBTICATED CONSUMER

3  COUNSELING, INC. does business (defendants DEBTICATED, INC. and

4  DEBTICATED CONSUMER COUNSELING, INC. will be collectively be referred to

5  in this complaint as "Debticated"); DEBTWORKS INC. ("Debtworks"), a for profit

6  Maryland corporation; INFINITY RESOURCES GROUP, INC. ("Infinity"), a for profit

7  Washington D.C. corporation; ERIKS PUKKE, an individual otherwise known as ERIC

8  PUKKE (hereinafter referred to as "Eric Pukke"); and his brother, ANDRIS PUKKE, an

9  individual.

## **INTRODUCTION**

12  1.     This case seeks to recover monies fraudulently obtained from among the

13  most desperate of consumers – those already so severely overburdened by debt that they

14  are on the verge of filing bankruptcy and who will do, and pay, virtually anything they

15  can to avoid that eventuality.

16  2.     Aiming itself directly at this market, Debticated heavily advertises itself in

17  print, Internet and broadcast media as the "industry leader" in providing credit

18  counseling, repair and debt management to consumers on a national basis, including in

19  California, and that it can and does provide its services with no advance fees to the

20  consumer because it is a non-profit tax exempt corporation.

21  3.     Plaintiff contends in this lawsuit, however, that although defendant

22  Debticated Consumer Counseling, Inc. represents itself to its customers as a non-profit

23  tax exempt corporation that does not charge advance fees, it is, in reality, one of several

24  arms of a single commercial enterprise that consists of defendants Debticated, Infinity,

25  Debtworks, Messrs. Pukke and, plaintiff believes, others.

26  4.     More specifically, Plaintiff contends that under the cloak of its "non-profit"

27  status, Debticated has been charging consumers fees otherwise prohibited under the

28  Credit Repair Organizations Act (15 U.S.C. § 1679, *et. seq.*) under the guise of soliciting

1   hundreds of dollars in "donations" from each of its customers.

2        5.     Plaintiff further alleges that no sooner than the "donations" are received by

3   Debticated, the overwhelming majority of these monies, other than what is paid for self-

4   propagating advertising, are promptly funneled to defendant Andris Pukke's for profit

5   corporation, defendant Debtworks, as "payment" for the customer support services that

6   Debtworks supposedly provides to Debticated's customers.   In short, plaintiff alleges

7   that defendant Debticated, which is, on information and belief, owned or substantially

8   owned by defendant Erik Pukke, and which is controlled by both Pukke defendants, is

9   nothing more than a non-profit shell organization that exists solely because the CROA

10  would preclude defendant Debtworks from directly charging the fees Debticated collects

11  on its behalf.   Plaintiff alleges that defendant Debtworks is, on information and belief,

12  owned or substantially owned by defendant Eric Pukke's brother, Andris Pukke and is

13  controlled by him singly.   He is the corporation's president, vice-president, treasurer and

14  secretary.

15       6.     Plaintiff further alleges that Debticated also serves as a direct conduit to

16  supply customers to defendant Infinity, another arm of the defendants' single

17  commercial enterprise, and which is another "for profit" company owned, or

18  substantially owned by defendant Andris Pukke and which is controlled by him singly,

19  or in conjunction with his brother Eric Pukke.

20       7.     More specifically, the way Debticated provides customers to Infinity is that

21  Debticated advertises extensively to consumers that what makes its services unique

22  among other debt counseling services is that *it* provides consolidation loans to its

23  customers.   Plaintiff alleges, however, that contrary to its explicit representations,

24  Debticated does not in fact make such loans.   Rather, after its customers have paid both

25  their "initial" "donation" and have made six consecutive "monthly" "donations" to

26  Debticated -- which Debticated states in its initial customer representations is a

27  prerequisite for consideration for any consolidation loan -- Debticated then directs all, or

28  substantially all of its customers seeking such consolidation loans to its commercial

1 | partner, defendant Infinity. Defendant Infinity then charges the customer a $25.00

2 | application fee, thus making additional profit for the overall enterprise.

3 |   8.   Further, although Debticated stresses in all of its advertisements and

4 | communications with its customers that what makes Debticated's services so unique and

5 | valuable to the consumer, and thus worth the fees/"donations" being charged, is its

6 | ability to obtain loan consolidation funding for the customer after the customer has

7 | completed six months on the Debticated program, the truth is that the vast majority of all

8 | customers, like plaintiff, who succeed in fulfilling all of the prerequisites for loan

9 | consideration, i.e. making the six monthly payments through Debticated and paying all

10 | required "donations," never actually receive a loan from Infinity.

11 |   9.   This action, therefore, seeks to recover from Debticated, Infinity,

12 | Debtworks, the two Pukke defendants and any other persons or entities that are part of

13 | the same commercial enterprise, all funds paid by the plaintiff and the classes of persons

14 | both in California and nationally to defendants Debticated and Infinity.

15 |   10.   The bases for such recovery include, but are not limited to:

16 |     (1)   The monies the plaintiff and the members of the classes paid as

17 |         "donations" to Debticated were obtained through the false

18 |         pretenses that Debticated was a not for profit tax exempt

19 |         institution, when in fact it is merely one arm of a single for profit

20 |         enterprise consisting of, at least, Debticated, Infinity and

21 |         Debtworks and whose profits ultimately inure to defendants Pukke;

22 |     (2)   The monies the plaintiff and the members of the classes paid as

23 |         "donations" to Debticated were not used in the manner specified in

24 |         the Debticated form contract;

25 |     (3)   The monies that plaintiff and the members of the classes paid to

26 |         Debticated in "donations" were really advance fees prohibited by

27 |         the CROA and Debticated's contracts are not exempt from the

28 |         CROA because Debticated is not really a non-profit tax exempt

1         corporation.

2     (4)    The monies plaintiff and the members of the classes paid in
3         "donations" to Debticated were paid pursuant to unconscionable
4         contracts;

5     (5)    The monies that plaintiff and the members of the classes paid to
6         Debticated in "donations" were obtained by the unfair, false and
7         fraudulent representations that: (1) Debticated is a legitimate non
8         profit tax exempt corporation that conducted its operations in the
9         manner required to obtain and maintain such standing.
10        (2) Debticated provided loan consolidation funding; (3) the
11        ultimate goal of the Debticated program was to obtain such
12        funding; (4) it would assist customers in securing consolidation
13        loan funding; (5) it would provide "back end" services such as
14        credit monitoring; and (6) if the customer succeeded in completing
15        Debticated's six month program, s/he would be very likely to
16        obtain a debt consolidation loan.   These representations were
17        fraudulent because: (1) Debticated is not a legitimate non-profit tax
18        exempt company and does not conduct its operations in a manner
19        consistent with the requirements necessary to obtain and maintain
20        its tax exempt status; (2) Debticated does not provide consolidation
21        loan funding; (3) the ultimate goal of the program is not for the
22        customer to receive consolidation loan funding, but to garner the
23        customer's fees, qua "donations;" (4) Debticated does not assist its
24        customers in getting consolidation loans, but merely refers them to
25        defendant Infinity so that the customer can pay an additional
26        $25.00 application fee; (5) the promised back end services are not
27        provided as advertised; and (6) defendants fail to disclose to
28        Debticated's customers that only a very small minority of its

customers would ever receive approval for a consolidation loan from Infinity even if they completed the full six months of the Debticated program.

(6)   Mandatory notifications required by the CROA were not provided.

(7)   The monies that the plaintiff and the members of the classes paid to Infinity were obtained by false pretenses in failing to disclose to Debticated's customers that only a very small minority of its customers would receive approval for a consolidation loan even if they completed the full six months of the Debticated program and paid the "application fee" to Infinity.

## JURISDICTION

11.   Jurisdiction of this action against the federal defendants lies under 15 U.S.C. § 1679, *et. Seq.*, 28 U.S.C. § 1331 and 28 U.S.C. Section 1367.

## PARTIES

12.   Plaintiff was during all times relevant hereto, a California resident, making her home in Los Angeles, California.

13.   Defendant Debticated Consumer Counseling, Inc. is ostensibly a New York non-profit tax exempt corporation with its principal place of business in New York. Although defendant Debticated Consumer Counseling, Inc. does business and actively solicits business in the State of California, including through print advertisements and through advertisements in the Internet and broadcast media throughout California, it is not licensed to do business in California.

14.   Defendant Debticated, Inc. is, on information and belief, a New York entity of form unknown and which is either the alter ego of defendant Debticated Consumer Counseling, Inc., or is a name under which Debticated Consumer Counseling, Inc. does business. Although defendant Debticated, Inc. does business in the State of California, it

1   is also not licensed to do business in California.

2   15.   Defendant Eriks Pukke, otherwise known as Eric Pukke, is, on information

3   and belief, the president and sole or majority shareholder in Defendant Debticated

4   Consumer Counseling, Inc. and has held senior positions within the company since its

5   inception.   It is alleged on information and belief that defendant Andris Pukke also

6   exerts control of defendant Debticated with his brother Eric Pukke.

7   16.   Defendant Debtworks, (which now apparently calls itself the Ballenger

8   Group) is a for profit corporation that is owned by, *inter alia*, defendant Andris Pukke.

9   It is alleged that defendant Debtworks is a Maryland corporation that provides customer

10   support services to defendant Debticated and that other than advertising expenditures

11   used to lure in more customers, the overwhelming majority of the moneys received by

12   defendant Debticated in the form of purported "donations" from consumers end up being

13   paid to defendant Debtworks via the fees Debtworks "charges" to Debticated.

14   Defendant Andris Pukke is the sole or majority owner of defendant Debtworks and

15   serves as its president, vice president, secretary and treasurer.

16   17.   It is alleged on information and belief that defendant Andris and Eric Pukke

17   control the operations of defendant Debtworks as part of the overall commercial

18   enterprise consisting of Debtworks, Debticated, Infinity and potentially other companies

19   and that Andris Pukke, in conjunction with his brother Eric Pukke, conspired together to

20   use these entities together for their own personal profit and gain.   In September 1996,

21   Pukke pleaded guilty in Pittsburgh to a federal charge of trying to defraud consumers by

22   falsely promising debt-consolidation loans.

23   18.   Defendant Infinity is, on information and belief, a Washington D.C.

24   corporation that purports to be in the business of money lending and whose principal

25   place of business is located in Maryland.   Since 1997 or earlier, Infinity has purportedly

26   offered debt consolidation loan services to consumers throughout much of the United

27   States, including California.   Although defendant Infinity does business in the State of

28   California, it is not licensed to do business in California.

19.   Defendant Andris Pukke is, and has been a senior officer of Infinity since the company's inception in 1995, and he currently serves as its vice president and secretary.   Plaintiff further alleges on information and belief that defendant Andris Pukke has been Infinity's sole or majority shareholder.   Plaintiff further alleges on information and belief that Defendant Andris Pukke's brother, defendant Eric Pukke, is Infinity's president and treasurer and exerts control over Infinity with his brother Andris Pukke.

20.   Plaintiff alleges on information and belief that Defendants Andris and Eric Pukke have actively directed and controlled the activities of Debticated, Infinity and Debtworks and that they together are the alter egos of defendants Debticated, Infinity, Debtworks and potentially other entities involved in the same commercial enterprise, such that recognition of the corporate existence of defendants Debticated, Infinity, Debtworks and any other corporate entities that are the alter egos of defendants Andris and Eric Pukke, and which are involved in the same single commercial enterprise alleged in this complaint, would promote injustice and inequity.   Indeed, it is alleged that defendant Debtworks and defendant Debticated share office space and that their respective Maryland offices are within ¼ mile of the offices of Infinity.   It is further alleged that the Washington D.C. office of Corporate Counsel has previously alleged that defendant Andris Pukke was the alter ego of Ameridebt.   It is further alleged on information and belief that defendant Debticated and Ameridebt share advertising expenditures and that the compensation defendants Pukke derive from the "donations" paid to Debticated (whether through Debticated or indirectly through moneys paid by Debticated to Debtworks) is far above that which is commensurate with ordinary standards for non-profit corporate officers.   It is further alleged that the two defendants Pukke conspired with each other to do the illegal acts alleged herein, have actively participated in these activities and have aided and abetted each other and their entities in the activities set forth herein.   Finally it is alleged that defendant Pukke's relation, Monica Shuster is an officer of Ameridebt and that his wife Pamela Shuster was also on

1    the board of that company.  It is further alleged that at least for the tax year 2000, both

2    Ameridebt and Debticated used the same accountant for the preparation of their tax

3    returns, which were both signed on the same day and have used the same attorneys.

4    Plaintiff further alleges on information and belief that this same accounting firm was

5    used by Debtworks and Infinity for the preparation of those entities' tax returns.

6        21.    Plaintiff further alleges on information and belief for Does 1 through 50

7    that each of these fictitiously named defendants is a joint venturer, partner, subsidiary,

8    parent, agent, representative, or alter ego of the other defendants and that these persons

9    or entities were a part of the single commercial enterprise alleged in this complaint and

10   that in doing the things hereinafter alleged, these persons or entities were acting in their

11   capacity as such and are therefore legally, equitably or otherwise responsible in some

12   manner for the damages herein allegedly suffered by plaintiff and persons similarly

13   situated, and/or has committed similar unfair business practices against the general

14   public.

15

16                      **FACTS COMMON TO ALL ALLEGATIONS**

17       22.    In or about the late summer of 2001, Plaintiff was falling behind in her

18   credit card and other debt obligations.  At that time, Plaintiff saw advertisements for

19   defendant Debticated Consumer Counseling, Inc. on the Internet and in print stating inter

20   alia, that:

21               Debticated is the industry leader in debt management and credit

22               counseling.  Our offices are equipped with state-of-the-art technology,

23               and our friendly counseling and customer service departments are second

24               to none.

25               *Through years of experience in the financial field, Debticated has*

26               *developed a revolutionary concept in debt consolidation, debt reduction,*

27               *and debt elimination that is by far the most beneficial in the industry.*

28               *Most companies in the industry simply offer debt management programs.*

**Debticated offers debt consolidation loans**, *debt management programs, or a combination of the two. This concept, created and implemented by Debticated has revolutionized the industry and is what separates us from our competition.*

Debticated is a 501(c)(3) non-profit credit counseling and debt management firm, ***therefore we do not charge any advanced fees for our services***. (Emphasis added.)

23. After reviewing defendant Debticated Consumer Counseling, Inc.'s advertising materials, Plaintiff telephoned defendant Debticated Consumer Counseling, Inc.'s offices. In that conversation, defendant Debticated Consumer Counseling, Inc.'s representative reiterated the claims made in Debticated's written advertising materials, to wit:

- That Debticated Consumer Counseling, Inc. was the industry leader in debt management and credit counseling;

- That Debticated Consumer Counseling, Inc. was unique among its competitors for its ability not only to provide credit counseling, but also because Debticated Consumer Counseling, Inc. could provide consolidation loans that would reduce her overall payments;

- That there were no fees charged for the program because Debticated Consumer Counseling, Inc was a non-profit corporation.

24. During this initial telephone conversation, plaintiff specifically inquired whether there was a possibility of being rejected for the consolidation loan, or whether a co-signor would be required. At that time, she was informed that the way the Debticated's loan consolidation program worked was that the client first submits all outstanding debt obligations to Debticated assigned representative, and from that point, Debticated Consumer Counseling, Inc. would negotiate with those creditors on the client's behalf to reduce the client's payments as much as possible. Then, once the new payment schedule was negotiated with the client's creditors, if the client stayed on the

program for six consecutive months and made all payments under the program timely, i.e. completing the Debticated program, and because of Debticated's close working relationship with lenders, the customer would likely be eligible for a consolidation loan without a co-signor or the possibility of being rejected.

25.   Plaintiff alleges that these representations were part of a common "sales pitch" directed at all consumers such as Plaintiff so as to entice them to sign up with the Debticated.  Plaintiff also alleges that Debticated's sales representatives were paid, at least in part, on the number of clients they could "sign up" and the amount of "donations" they solicited.

26.   At the conclusion of her initial telephone call, Plaintiff provided a facsimile number where additional materials could be sent to her.

27.   On October 23, 2001, after Plaintiff's telephone call, Plaintiff received a letter from "senior account executive" Blake Goldsmith, with whom she had earlier spoken, enclosing an informational flyer, a proposed contract for services, an authorization to release information to Debticated and a Creditor Information sheet.  A true and correct copy of all of this correspondence is attached hereto as Exhibit "A."

28.   Mr. Goldsmith's letter again stressed in bold print emphasized from the rest of the text of the letter that:

> **Please remember that it does not cost you any money to start this program so please return the information right away so we can start saving you money today.**

29.   Mr. Goldsmith's letter also stated:

> As a non-profit company, Debticated's goal is to assist any consumer in need of financial assistance and to provide each consumer with friendly and competent counseling backed by unparalleled customer support. Debticated is one of the nations (sic) largest and most reputable debt management services.
>
> Unlike other debt management companies, we provide you with very

important "back-end services" to help keep your credit protected and clean. Our credit report review will make sure you are not being miss marked with someone else's debt and the loan referral program will give you the opportunity of receiving a low interest unsecured consolidation loan to pay your bills faster.

By completing this information and sending it back to my office, you are not making a commitment to work with Debticated, you are simply allowing our company to give you a free evaluation of your financial situation and to determine what your monthly payment will be and what type of interest reduction you will be expecting. If you fax back pages 5, 6, 7, and 8 to my office within 48 hours of receiving this package, you will be given the opportunity of choosing your own payment date. (Emphasis original).

30.    The informational flyer that was enclosed with Mr. Goldsmith's letter stated along these same lines that:

Debticated, Inc. is the **ONLY** company in the country that offers such a unique and beneficial debt consolidation program.

Our **six month** program has revolutionized the debt consolidation industry by providing clients with the **benefits associated with working with a non-profit credit counseling company, combined with the opportunity for a complete debt consolidation loan**. There is no other company or program available that can provide you with both of these benefits, and we are certain that once you begin working with Debticated you will be as exited as we are about our revolutionary debt consolidation concept.

**OPPORTUNITY FOR A COMPLETE DEBT CONSOLIDATION LOAN** – If you successfully complete the program we will attempt to secure a debt consolidation loan for you. If this is accomplished, your

accounts would be paid in full and your payments and interest rates would be reduced even further. **This is the ultimate goal of the program.** (Emphasis original).

33.   Plaintiff alleges that the representations that were made to her by Debticated's customer representative, the form letter and the package that was sent to her, including the informational flyer, are typical of the experience of the classes identified herein and were part of Debticated's common sales pitch, whereby customers such as plaintiff were solicited into "signing up" with Debticated.   Further, plaintiff alleges that at no time did Debticated disclose to her, or to any other member of the classes, either orally or in writing that the act of signing up with Debticated would operate to further mar plaintiffs' credit rating.

34.   Among the other materials submitted with Mr. Goldsmith's letter and attached hereto as Exhibit "A" was Debticated's form contract.   Plaintiff notes in this regard that Mr. Goldsmith's letter stating that "By completing this information and sending it back to my office, you are not making a commitment to work with Debticated" was not true.   Indeed, once plaintiff signed and returned the executed contract, she had committed herself to Debticated.   Plaintiff further notes in this regard that the form contract provided to plaintiff and which she signed and returned purports to be with Debticated, Inc. and not Debticated Consumer Counseling, Inc.   Plaintiff alleges that Debticated, Inc., however, is not a licensed not for profit corporation.   As such, plaintiff alleges that the contract she signed, and those which were signed by the members of the classes were subject on this basis alone to the provisions of the CROA and that they violated those provisions.

35.   The Debticated, Inc. preprinted form agreement provides, inter alia, as follows:

> I understand that Debticated does not charge any required "advanced fees" for any of their (sic) programs, but I understand that I have been requested and voluntarily agree to make a one time non-refundable

"counseling" contribution to Debticated equivalent to one payment on the debt management program that will be procured from my first payment. *I understand that the "counseling" contribution will be used to cover the operational costs involved in setting up my account and negotiating with my creditors.* I further understand that in addition to the one time "counseling" contribution, I have also been requested and agree to make a voluntary "monthly" contribution of $6.00 per account that Debticated is handling for me. *These funds will be used to cover the costs involved in handling my creditors on a monthly basis.* I authorize Debticated to deduct this contribution every month that I am on the debt management program. I understand that all requested contributions are voluntary and that Debticated will assist me regardless of whether or not I agree to contribute. I also understand that some creditors will make voluntary financial contributions to Debticated based on payments made by Debticated on my behalf, and I authorize Debticated to accept such contributions. (Emphasis added)

36.     Notwithstanding the contract's professed representation that the solicited "contributions" are voluntary and that Debticated will assist the customer whether or not the contributions are made, ***nowhere on the preprinted form agreement is there any place for a customer to decline to make the requested contribution,*** or to designate a different amount for their contribution than that set forth in the Debticated, Inc. preprinted form contract. Plaintiff contends this is an unfair business practice. Further, plaintiff alleges that the entire notion of including the making of a charitable donation as part of a term for a contract to provide services is antithetical to true donative intent. In short, the payment, although couched in the language of a donation, is not in fact a gift, because the "donor" expects an economic benefit in return for the "donation." It is thus false and misleading for Debticated to represent to its customers that the money they are paying for these services is a "donation" that would be properly deductible on the

1    customer's taxes.

2    37.   Moreover, the "contribution" terms are presented to the customer in the

3    form of a bait and switch after the customer has been initially "roped in" with promises

4    of no advance fees.  Further, plaintiff alleges that Mr. Goldsmith told her that, in any

5    event, the contribution was needed for Debticated to provide its services.  Thus, while it

6    may be the case that there have been isolated instances where a Debticated customer has

7    refused to donate, or has specifically written over the standard pre-printed Debticated

8    form contract to indicate that the customer would only agree to a lesser "donation" than

9    specified, the way the agreement is presented to consumers makes the contract both

10   procedurally and substantively unconscionable.  This is especially so considering the

11   representations of "no advanced fees" that were contained in Debticated's

12   advertisements and the desperate state of the customers to whom those representations

13   were intended to be made and the promises of eligibility for consolidation loan funding

14   that had been made.

15   38.   On October 23, 2001, plaintiff signed the contract and returned it to Mr.

16   Goldsmith at Debticated.  *On that very same day*, Mr. Goldsmith sent plaintiff a letter

17   stating as follows:

18        I have reviewed your file and am enthusiastic that we can help you with

19        your current situation.  I have already started the initial negotiations with

20        your creditors and the response has been great.  If you are receiving calls

21        from your creditors, it is normal.  Please remember to refer any calls to

22        me.  **Please remember that your payment is due 10/29/01.  Your**

23        **regular monthly payment will be $552.00.**

24   39.   When plaintiff received this letter, plaintiff contacted Mr. Goldsmith and

25   expressed to him her shock his "negotiations" had resulted in *an increase* in her normal

26   monthly payments.  Mr. Goldsmith responded to plaintiff's concerns by telling her that

27   understood that it would be extremely difficult for plaintiff to meet the *increased*

28   monthly obligation for the six months required to complete the Debticated program, but

that if she could do it, it would be worth it in the long run because once she completed the Debticated program and obtained her consolidation loan, she would save thousands of dollars (as compared with her current credit card obligations) over the life of that loan. Mr. Goldsmith even suggested to plaintiff that she go to her family for help to get her through the *six months of increased payments* so that she could be eligible for the consolidation loan.

40.    Plaintiff alleges that Debticated did not in fact "negotiate" with plaintiff's creditors as represented by Debticated. Indeed, how could it have, considering that Mr. Goldsmith's letter to plaintiff outlining her new monthly payment obligation was sent to plaintiff the very same day she signed her contract.   Rather, plaintiff alleges on information and belief that Debticated either has a prearranged standard formula that it applies to all its customer accounts that emanate from a particular lender or that it otherwise has a standard formula by which it sets its customer's monthly payment schedule. In other words, plaintiff alleges that Debticated's contractual representations that it "negotiates" on the customer's behalf is simply false.

41.    After signing up with Debticated, Plaintiff made all the increased payments required of her under the Debticated program, including paying $552.00 as her "initial contribution" and her $11.95 monthly contributions (calculated on the basis of the two accounts for which she was seeking assistance) for at least six months.[1]

42.    Despite Debticated's representations that *it* offered debt consolidation loans and that after completing six months on the Debticated program *it* would "attempt to secure a debt consolidation loan for you," neither representation was true.   Rather, in or about May 2002, after successfully completing six months on the Debticated program, Debticated simply provided plaintiff with the name and address of Infinity for her to apply for the advertised consolidation loan. Debticated did nothing in the way of either

---

[1] One of plaintiffs' payments (May 2002) was lost by Debticated. Plaintiff, however, made the payment timely and has her Western Union receipt to prove it. Further, defendant Infinity sent plaintiff a letter confirming her completion of the Debticated six-month program.

loaning plaintiff money directly, offering to do so, or otherwise "assisting" plaintiff in securing such a loan as promised.   Nor did it disclose to plaintiff that Infinity, the company to whom she was referred, was simply part of the same commercial enterprise as Debticated and that the $25.00 fee that was being charged by Infinity to "process" her loan application was also for the benefit of this same enterprise.   Further, since Debticated and Infinity are, in reality, part of the same commercial enterprise, the enterprise could have reviewed plaintiffs' credit from the outset and told her that she would not be eligible for a consolidation loan from Infinity prior to her signing up and paying fees to Debticated.   In short, because Infinity and Debticated are operated by the same people, all of the representations regarding the need for plaintiff to complete the Debticated program in order to become eligible for a consolidation loan were false. Plaintiff could have, and should have been told at the very outset that no matter whether she completed the Debticated program or not, she was not going to be eligible for a consolidation loan from Infinity without her obtaining a cosigner to the loan.   There was simply no need for plaintiff to complete the six-month Debticated program or for the plaintiff to pay $25.00 to Infinity for an application fee.   Instead of telling plaintiff up front that she would not qualify for a loan with Infinity, plaintiff alleges that Debticated/defendants use the prospect of receiving such a consolidation loan as an inducement to all its customers to sign up for the Debticated program and to pay the solicited "donations" to Debticated (and the loan fee to Infinity) even though defendants know in advance that most of Debticated's customers will never receive  any such funding even if they successfully complete the Debticated program.   Plaintiff contends this is unfair, misleading, false and fraudulent.

43.   Upon being referred to Infinity, plaintiff contacted Infinity through its internet web site to request an application.   After several weeks during which plaintiff was still making her "donations" to Debticated, on June 3, 2001, and notwithstanding that Debticated had referred her after she had made all of her payments to Debticated as specified in Debticated's program, Infinity declined to send plaintiff a loan application.

In infinity's initial letter denying the plaintiff's loan application, Infinity gave for its reason the following.

> We have reviewed your request for financing options through the debt management company. However, according to the debt management company's records we are unable to process your request due to the following reason(s).
>
> Due Date: 24
>
> **Payments Received or Reason:**
>
> **11/30/01**
>
> Remember, clients requesting an application must make 6 consecutive payments that have been distributed to your creditors through the debt management company.

44. Plaintiff thereafter wrote to Debticated the following:

> My second payment to Debticated was wired on 11/23/01, the day before its due date. It was sent to the wrong account. I spoke with someone at that time about the payment and was informed that it would Not be a problem when being reviewed for the loan because it WAS wired ON TIME. A letter from INFINITY RESOURCES GROUP is enclosed. According to them it is a potential problem. Please contact them to let them know payment was made on schedule, so that they may send an application ASAP. This is per their request. Thank you.

45. Ultimately, on or about June 7, 2001, Infinity did send plaintiff an application along with a preprinted form letter stating that:

> Infinity Resources Group Inc. has received your request for financing. You are eligible to be considered because you have made on-time payments to the Debt Management Company for a period of at least six months.
>
> In order for us to process your request, **please complete the attached**

**application, including all information and documentation\*\* and return *both copies* to us signed along with a $25.00 check or money order for processing\*.** (Emphasis original).

46. The two asterisks in the portion of the letter referred to above stated as follows:

*\*The check or money order is non-refundable and does not guarantee an approval of your application.*

*\*\* If you have been employed for less than two years, you must include a job stability report with your application.  See attached stab report for information.*

47. Plaintiff fully complied with all of Infinity's requirements, including submitting her job stability report.

48. On or about June 31, 2001, plaintiff was informed by both her credit card companies that they had not received any payments from Debticated since May 3, 2001. Plaintiff thereafter phoned Debticated and was told that Debticated had not received her June payment.  Plaintiff, however, had sent that payment by Western Union transfer and Debticated ultimately conceded this after a protracted dispute, and only after Western Union itself became involved.

49. On or about June 31, 2001, Plaintiff was informed by Infinity that her application was lacking certain information.  Plaintiff called Infinity on or about July 3, 2002 and was told by Infinity that in addition to providing the additional requested information, and because she had not been employed with her current employer for more than one year, she would need a cosigner for her application to have a chance to be approved.  This was explicitly contrary to the representations made to plaintiff by Debticated.  Having been told that she could not qualify for a loan without a co-signer, and having no one available to act in that capacity, plaintiff gave up.  Debticated made no further efforts to assist plaintiff in securing loan funding and plaintiff then severed her ties with Debticated.

50.     Plaintiff further alleges that her experience is typical of the experience of the classes identified herein, i.e. that after being lured in by Debticated's advertisements and representations regarding: (1) its supposedly unique program, (2) its non-profit status, (3) its charging no advance fees, (3) its negotiating with creditors on the customer's behalf, (4) its providing "back end" credit monitoring services; (5) *its* providing loan funding, (6) and its assisting customers in securing loan funding after the customer completed the Debticated six month program (and after paying Debticated all of its attendant fees), these representations turned out to be false.  Nor was plaintiff ever advised that her act of simply signing up with Debticated would be a black mark on her credit that would last for years.

51.     While plaintiff alleges that Infinity has, on some occasions, made loans to Debticated customers referred to it by Debticated, plaintiff alleges that the total number of loans that Infinity actually consummates represent but a very small minority of all applications they receive from Debticated's customers and that Debticated (and even perhaps Infinity) has made more money from fees received from customers than Infinity has made from the loans it has actually made to Debticated's customers.

52.     Plaintiff further alleges in this regard that Debticated's advertisements and representations which all center around the supposedly unique nature of the Debticated program based on its ability to provide consolidation loan funding as the "ultimate goal" of the Debticated program, are unfair, false, misleading and fraudulent.  Plaintiff alleges that even though Debticated and the other defendants know that only a tiny minority of persons completing the Debticated program will ever receive approval for consolidation loans from Infinity, Debticated nonetheless prominently features its representations regarding loan funding in its advertisements and initial customer contacts as the "carrot" to be dangled in front of financially desperate consumers in a deliberate attempt to induce them into signing up with the Debticated program and paying fees/donations that the customers cannot afford for services they do not need or could get elsewhere for substantially less money.   Then, once the hand has been played out and the fees

1  collected, the customer is denied the loan that got them into the program in the first

2  instance and told that there is nothing more that Debticated can do for the customer.

3      53.   Plaintiff further alleges on information and belief that defendant Infinity

4  was sued by the Washington D.C. office of the Corporate Counsel in 1998 for operating

5  a similar scheme with Ameridebt, Inc., another supposedly non-profit debt counseling

6  corporation owned and operated by defendant Andris Pukke.   In that case, the scheme

7  was that Ameridebt made virtually identical claims regarding the unique nature of its

8  services and the ability to provide consolidation loan funding.   Then Ameridebt would

9  charge the customer a small initial fee to refer the customer to Infinity, which would

10 then charge the customer a substantial fee in the hundreds of dollars for processing the

11 application.   Then, in the vast majority of cases it would deny the loan.   Ameridebt,

12 Infinity and Andris Pukke settled with the Office of Corporation Counsel for in excess of

13 $2.0 million dollars, with the defendants entering into a consent decree to cease their

14 false and deceptive practices.   Further, as previously stated, Mr. Andris Pukke has a

15 prior felony conviction for making false loan promises.

16     54.   Plaintiff alleges on information and belief that the current scheme being

17 practiced by Debticated, Infinity, Debtworks and defendants Pukke was created in

18 response to the consent decree.   Whereas it used to be that Infinity would collect the

19 hundreds of dollars in fees from the customer, the Pukke defendants have now arranged

20 it so that the non-profit company does the majority of the collection work and that the

21 nominal fee is charged by Infinity.   However, the end result is exactly the same to the

22 consumer; fraudulent representations regarding loan availability are used to collect

23 hundreds of dollars from a set of consumers that can least afford the money.

24     55.   Plaintiff is informed and believes that Ameridebt may be part of the same

25 commercial enterprise that plaintiff alleges includes Debticated, Infinity and Debtworks.

26 Plaintiff alleges that like Debticated, Ameridebt is an entity that is owned and controlled

27 by one or both Pukke defendants and lures customers in with the same type of contracts

28 soliciting "donations" in lieu of fees and makes similar representations regarding the

availability of consolidation loan funding as the goal of its program that have been alleged herein as to Debticated.  If discovery reveals that Ameridebt is in fact merely another part of the same commercial enterprise alleged herein, plaintiff will amend this complaint to include Ameridebt and any other such entities under the Pukke's control that are part of this same commercial enterprise.

## CAPACITY

56.    Plaintiff is a member of the class of consumers nationwide who "donated" money to Debticated and any other similar supposedly not for profit entity owned and operated by the Pukke defendants as part of the same commercial enterprise alleged herein within the past three years and/or who paid loan application or processing fees to Infinity within the same period.

57.    Plaintiff is also a member of the class of Californians who "donated" money to Debticated and any other similar supposedly not for profit entity owned and operated by the Pukke defendants as part of the same commercial enterprise alleged herein within the past three years and/or who paid loan application or processing fees to Infinity within the same period.

## CLASS ALLEGATIONS

58.    In the face of a juggernaut of national radio and print advertising (plaintiff alleges on information and belief that Debticated was the single largest advertiser on YAHOO.COM in the year 2001), plaintiff alleges over 200,000 consumers in desperate financial trouble like her, and seeking debt counseling assistance, have sought help from Debticated.  For example, a typical Debticated advertisement entices the consumer with blurbs such as: "Bill Problems?  Relax Debticated is here to help" and "Debticated is the industry header in debt management and credit counseling."

59.    In its print advertisements, Debticated represents to consumers, such as plaintiff, across the country that:

1  "Our offices are equipped with state-of-the-art technology and our
2  friendly counseling and customer service departments are second to none.
3  Through years of experience in the financial field, Debticated has
4  developed a revolutionary concept in debt reduction, and debt elimination
5  that is by far the most beneficial in the industry.  Most companies in the
6  industry simply offer debt management programs. ***Debticated offers debt***
7  ***consolidation loans***, debt management programs, or a combination of the
8  two." (Emphasis added).

9      60.    Although the availability of a "loan" from Debticated is specifically touted
10  by Debticated as a service *it* provides to its customers, and that this is part of its
11  "revolutionary concept" unique to Debticated, these representations that have been made
12  to consumers nationwide, and in California, are simply not true.   The fact is that
13  Debticated does not actually provide loans.

14      61.    Plaintiff alleges that since its inception, Debticated (and potentially other
15  like "non-profit" companies controlled by either or both of the Pukke defendants as part
16  of the same commercial enterprise (such as potentially Ameridebt)), has instead referred
17  virtually all of the consumers to whom it has made these promises to exclusively or
18  almost exclusively to defendant Infinity for debt consolidation loans.  Plaintiff further
19  alleges that, on information and belief, Debticated's employees (and potentially the
20  employees of other like "non-profit" companies controlled by either or both of the Pukke
21  defendants as part of the same commercial enterprise) or the employees of Debtworks
22  have been offered bonuses for either signing up customers and/or referring customers to
23  Infinity for loans.  Further, plaintiff alleges that although Debticated has represented to
24  consumers across the country and in California that it would provide "assistance" in
25  securing loan funding, these representations have been false in that all Debticated has
26  done is provide a referral, where the consumer then must attempt to consummate the
27  transaction without any assistance whatsoever from Debticated.

28

62.   During their initial telephone contacts with consumers, Debticated's counselors routinely tell consumers about the unique nature of Debticated's debt counseling services and about the likelihood of qualifying for a debt consolidation loans if they stay on the Debticated program for six months.  Based on the amount of debt that a consumer has, Debticated then sets a payment amount that the consumer must send to Debticated each month for disbursement to his or her creditors.  This payment amount is also the amount that is then demanded from the customer as a "donation" to Debticated in its preprinted form contract that is sent to all of its prospective customers.  (Plaintiff alleges that at least with respect to Ameridebt, the same sort of representations are made to its potential customers and that there may be other organizations owned and controlled by the Pukke defendants that operate with this same strategy as part of the same commercial enterprise).

63.   Debticated's representatives also routinely represent to consumers that Debticated it is a "non-profit" counseling organization that does not charge any advance fees for its services.  In fact, these representations are not true.  Debticated is not in fact a non-profit or tax-exempt organization, but an organization specifically designed to make profits for defendant Pukke's for profit companies, Infinity and Debtworks.  The substantial majority of the funds Debticated has solicited in "donations" (other than advertising expenses) have inured directly to defendants Pukke and their for profit companies, Debtworks and Infinity.  (Plaintiff alleges that this same type of "money laundering" is also true with respect to Ameridebt and that substantially all of the money it has received in donations (other than advertising expenses) has also been paid to Debtworks, Infinity, or otherwise is traceable back to the Pukke defendants).

64.   Plaintiff further alleges that the overwhelming majority of consumers who have paid advance fees to Debticated and made their six consecutive timely payments (with the attendant monthly "counseling donation") under Debticated's program are never actually approved by Infinity for debt consolidation loans and that this is and has been a pattern of doing business on the part of Infinity and Debticated.  (Plaintiff also

alleges that the allegations of this paragraph also apply to Ameridebt and the other similar non-profit debt counseling firms owned and operated by the Pukke defendants).

65.   When consumers not receiving debt consolidation loans have demanded refunds from Debticated, Debticated has told the consumers that either all or a majority of the advance fee must be retained by Debticated to cover the costs incurred in monitoring the consumer's credit and payment record.

66.   Plaintiff further alleges that since its inception, the total amount of money that Debticated has received from consumers across the country and in California in the form of advance fees, or what it calls "donations," has numbered in the millions of dollars and has far exceeded the total amount of money that Infinity has actually lent to Debticated's customers through its touted consolidation loans. (Plaintiff also alleges that the allegations of this paragraph also apply to Ameridebt and the other similar non-profit debt counseling firms owned and operated by the Pukke defendants).

67.   Debticated (and potentially other like "non-profit" companies controlled by either or both of the Pukke defendants as part of the same commercial enterprise described herein (such as potentially Ameridebt)) has continually represented to consumers, expressly or by implication, that consumers who paid their initial and monthly "donations" to Debticated and made six consecutive timely payments under Debticated's program would be highly likely to be able to obtain a debt consolidation loan because of its relationships with lenders.  These representations were known to be untrue when made.   In fact, most consumers who have paid the advance fee to Debticated and made six consecutive timely payments under Debticated's program were not able to obtain a debt consolidation loan.

68.   Debticated (and potentially other like "non-profit" companies controlled by either or both of the Pukke defendants as part of the same commercial enterprise (such as potentially Ameridebt)) has continually represented to consumers, expressly or by implication, and in conjunction with its efforts to solicit "donations" that Debticated is a non-profit tax exempt counseling organization and, therefore, is not operated for the

purpose of generating profits.  In fact, since its inception, Debticated's primary purpose (and the primary purpose of defendants Pukke's like entities) has been to generate new business for one or more for-profit companies operated by, or under the control of, Defendants Pukke, i.e. defendants Debtworks and Infinity.   As such, all of the "donations" that were solicited by Debticated (and the defendants Pukke's like entities) from consumers were obtained by false pretenses, i.e. that the consumer was donating money to an organization that was not attempting to make a profit by the donation.

69.   Debticated (and potentially other like non-profit companies owned and operated by the Pukke defendants in a similar manner), has continually represented to consumers, expressly or by implication, that if, prior to being approved for a debt consolidation loan, a consumer pays a "donation" to Debticated, then Debticated will use those funds for the purposes specified in the contract.  This is not only contrary to true donative intent, but in fact, Debticated has not used the "donations" in the manner specified under its contract.

70.   Debticated has also represented to consumers that if they sign up for Debticated's service and pay the requested fees, Debticated will provide "back end" services, including ongoing monitoring of the consumer's payment and credit records. Plaintiff alleges that Debticated does not provide these services to its customers as advertised.

71.   It is impractical to bring all members of the above classes of persons as individual plaintiffs before the court because the number of members of the classes is in the thousands, and is therefore too numerous to be effectively managed in a manner other than through a class suit.   Additionally, the maintenance of a class action is appropriate in this instance because the relative amount of each individual claim is not sufficient to make individual litigation of each class member's claim economically feasible.

72.   The questions of law and fact which are common to the members of the classes predominate over the questions affecting the individual members of the classes,

including plaintiff.  More specifically, the common issues of law that will predominate over the questions affecting individual members of the classes are, _inter alia_, whether Debticated is in fact a non-profit tax exempt company (mixed law and fact), whether its conduct violates the CROA and whether Debticated and Infinity's conduct, including its representations and/or offers constituted "unfair," or "unlawful" or "fraudulent" business practices under California's Unfair Competition Law and similar laws in other states.

73.    The common questions of fact that will predominate arise from, _inter alia_: (1) whether Debticated (and any other exempt organizations operating as part of the single commercial enterprise controlled by the Pukke defendants as alleged herein) are in fact truly nonprofit tax exempt entities; (2) whether Infinity and Debtworks and potentially other entities controlled by the Pukke defendants are in fact a single commercial enterprise; (3) whether Debticated's representations in its advertisements and printed materials (including its contract) and which were intended to be presented to the consuming public at large, and not to any specific individual, were true; and (4) whether similar misrepresentations were made by other Pukke controlled entities. Further, plaintiff alleges that the oral representations made to the plaintiff were part of a coordinated "pitch" that was also aimed at the general public and not to any specific individual and that the same sort of pitches were made by other Pukke controlled entities.  Likewise, plaintiff alleges that the application fees collected by Infinity were "pitched" and collected by Infinity as part of a pattern and practice of deception in which it partnered with Debticated and potentially other Pukke controlled entities all to the benefit of defendants Pukke and Debtworks.

74.    The claims of plaintiff are typical of the claims of the members of the classes.  Plaintiff is like all customers of Debticated and any other Pukke controlled entities that are part of the single commercial enterprise that were offered debt counseling services and debt consolidation loans as an inducement to sign up with the Debticated program and pay the "donations" required thereunder.  Similarly, plaintiff is like all customers who paid Infinity $25.00 for processing an application that Infinity,

Debticated and the Pukke defendants in advance of the representations made to plaintiffs and the members of the classes identified herein that there was little or no likelihood that the customer would actually receive the touted consolidation loan.

75. While the specific amounts of the donations made by each of Debticated's respective customers (and the customers of any other Pukke controlled entity operating within the same commercial enterprise alleged herein) may differ depending upon the amount of their overall debt and the number of accounts that the customer entrusted for servicing, the damages suffered by each of the members of the classes will be calculable under a single formula, namely the amount of the donations made.

76. Similarly, with respect to the monies paid to Infinity, plaintiff alleges that these, too, consisting as they do of application fees only, can be calculated using a single formula.

77. Plaintiff is represented by able counsel who will adequately represent the classes of persons alleged in this complaint. Plaintiff has no conflict with any members of the classes that would disqualify her from adequately serving as class representative and vigorously prosecuting this claim.

78. As set forth in more detail in prior paragraphs of this complaint, Plaintiff alleges that Debticated Consumer Counseling, Inc. (and potentially other supposedly non-profit tax exempt corporations owned or controlled by the defendants Pukke) is not in fact operated as a non-profit corporation, but is, in reality, merely one of the arms of defendants' Pukke's single for profit enterprise comprised of defendants Debticated, Infinity, Debtworks and potentially other entities under the ownership and/or control of defendants Pukke.

## FIRST CAUSE OF ACTION FOR VIOLATION OF THE CROA
## AGAINST ALL DEFENDANTS

79. Plaintiff realleges and incorporates paragraphs 1 - 78 as though set forth here in full.

80.  As set forth in more detail in prior paragraphs of this complaint, Plaintiff alleges that Debticated Consumer Counseling, Inc. (and potentially other non-profit corporations owned by the defendants Pukke) is not in fact operated as a non-profit tax exempt corporation, but is, in reality, merely one of the arms of defendants' Pukke's single for profit enterprise comprised of defendants Debticated, Infinity, Debtworks and potentially other entities under the control of defendants Pukke.

81.  Defendant Debticated solicited "donations" from the plaintiff and the members of the classes as set forth above.   These "donations" solicited on behalf of an allegedly non-profit tax exempt corporation were in fact fees collected by what is in fact a for-profit credit counseling company and were thus subject to the CROA.

82.  The CROA requires full disclosure regarding consumer rights before any contract for credit repair services is executed.  A written statement must be provided and signed by all prospective customers, and must be retained by the credit repair organization for at least two years after the statement is signed.  Consumers must be advised, inter alia, that:

- They may dispute inaccurate information in their credit report by contacting the credit bureau directly;

- There is no right to have accurate, current, and verifiable information removed from a credit report unless it is over seven years old.  Bankruptcy information can be reported for ten years;

- They have a right to sue a credit repair organization that violates the Credit Repair Organizations Act; and

- They have the right to cancel a contract with any credit repair organization for any reason within three business days from the date it was signed.

83.  The CROA also requires that a written contract for credit repair services must, inter alia:

- Specify the terms and conditions of payment, including the total amount of all payments to the credit repair organization or any other person;

- Contain a full and detailed description of the services to be performed by the credit repair organization for the consumer, including:

    (A) all guarantees of performance; and

    (B) an estimate of the time required for the performance of the services;

- Contain the credit repair organization's name and principal business address; and

- Contain a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.

84.   Plaintiff alleges that Debticated's pre-printed form contract does not comply with these requirements and that the required advisories were not given to Debticated's customers.

85.   The CROA also provides further protection for consumers with a list of prohibitions.  The Act prohibits credit repair organizations, *as well as their employees and agents*, from:

- ***Misrepresenting the organization's services***;

- Making or enticing consumers to make untrue or misleading statements; either to the credit reporting agencies or to the consumer's creditors

- Advising consumers to attempt to change their credit identities;

- Accepting payment or other valuable consideration for their services in advance of fully performing those services. (Emphasis added.)

86.    It is alleged on information and belief that all Doe defendants participated in the same species of wrongful conduct alleged herein.

87.    Based on the facts alleged, the defendants have violated the CROA such that their contracts with Debticated are void and plaintiff, and the members of the classes, have suffered damages as a result of Debticated's violations. They, therefore, are entitled to recover all of the "donations" that were paid to Debticated in violation of the CROA, as well as any other items of damages, including punitive damages and attorneys' fees authorized by the CROA.

88.    Plaintiffs are also entitled to recover these same monies against defendants Debtworks, Infinity and the Pukke defendants (in addition to any other non profit or for profit entities owned and controlled by the Pukke defendants involved in the same commercial enterprise) on the bases that these defendants operate together as a single commercial enterprise, that Debticated is the alter ego of defendants Pukke, Infinity and Debtworks (and potentially other entities) and that defendants Pukke, Infinity and Debtworks (and potentially others) conspired with and aided and abetted the commission of the wrongful acts alleged herein. Further, the CROA makes clear that many of its prohibitionary provisions apply to "any person" and not just to the credit repair organization.

89.    Defendants' conduct in knowingly doing the things alleged herein to the most vulnerable class of consumers was despicable, deplorable and malicious so as to shock the conscience of every decent person so as to entitle plaintiff and the members of the classes identified herein to punitive damages.

## SECOND CAUSE OF ACTION FOR VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT (CALIFORNIA *CIVIL CODE* SECTION 1750, ET SEQ.) AGAINST ALL DEFENDANTS

90.   Plaintiff realleges all of the allegations made in paragraphs 1 – 88 of this complaint as though set forth here in full.

91.   California *Civil Code* Section 1750 et seq. (entitled the Consumer's Legal Remedies Act) provides a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating The Consumer's Legal Remedies Act is expressed in California *Civil Code* Section 1760. That statute provides, <u>inter alia</u>, that its terms are to be:

> "construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."

92.   In the context of the Consumer's Legal Remedies Act, the term "services" is defined in California *Civil Code* Section 1761(b) as:

> "work, labor, and services for other than a commercial or business use, including services in connection with the sale or repair of goods."

93.   "Consumer" is defined in California *Civil Code* Section 1761(d) as:

> "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household use."

94.   "Transaction" is defined in California *Civil Code* Section 1761(e) as:

> "an agreement between a consumer and any other person, whether or not the contract is enforceable by action, and includes the making of, and the performance pursuant to, that agreement (emphasis added)."

95.   Included within the Consumers Legal Remedies Act ("CLRA") is California *Civil Code* Section 1770. This section provides a specific list of sales practices the California Legislature has determined should be prohibited because they are unfair or

1   deceptive to consumers.  Like all of the provisions of the CLRA, the Legislature has

2   determined by its enactment of *Civil Code* Section 1760, that the proscriptive provisions of

3   *Civil Code* Section 1770 are to be liberally construed to promote the CLRA's underlying

4   purpose of consumer protection.

5       96.   Among the list of prohibited sales practices contained in Section 1770 and

6   which defendants have violated are the following:

7       **"Civil Code Section 1770.**   Unlawful   Methods   of   Competition,

8   Unfair or Deceptive Acts.

9       (a)   The following unfair methods of competition and unfair or

10   deceptive acts or practices undertaken by any person in a

11   transaction intended to result or which results in the sale or

12   lease of goods or services to any consumer are unlawful:

13   …

14   (5)   Representing that goods or services have sponsorship,

15   approval, characteristics, ingredients, uses, benefits, or quantities

16   which they do not have or that a person has a sponsorship,

17   approval, status, affiliation, or connection which he or she does not

18   have.

19   (5)   Advertising goods or services with the intent not to sell them

20   as advertised.

21   (13)   Making false or misleading statements of fact concerning

22   reasons for, existence of, or amounts of price reductions.

23   (14)   Representing that a transaction confers or involves rights,

24   remedies, or obligations which it does not have or involve, or

25   which are prohibited by law.

26   (19)   Inserting an unconscionable provision in the contract.

27       97.   It is alleged on information and belief that all Doe defendants participated in

28   the same species of wrongful conduct alleged herein.

98.    As a direct and proximate result of the defendants' violation of these provisions of the CLRA as set forth in this complaint, plaintiff, and all of the members of the classes of similarly situated persons have suffered damages and are entitled to the following relief from the defendants:

(1)    Actual damages, but in no event less than one thousand dollars;

(2)    An order enjoining Debticated from continuing to represent itself as a non-profit tax exempt organization;

(3)    An order enjoining Debticated from operating outside the provisions of the CROA;

(4)    An order enjoining Debticated from making misleading representations to the public concerning the availability of consolidation loan funding;

(5)    An order enjoining Debticated from representing that it will perform services that it does not perform;

(6)    An order enjoining defendant Infinity from retaining any part of the $25.00 application that it charges to any consumer to whom it does not actually provide consolidation loan funding;

(7)    An order enjoining Infinity from making false or misleading statements regarding the availability of consolidation loan funding;

(8)    An order for the restitution by all defendants (except the federal defendants) of all money paid by the classes identified herein to Debticated and Infinity within the past three years;

(9)    Attorneys' fees; and

(10)   Punitive damages.

108.    Further, defendants' conduct in knowingly doing the things alleged herein to the most vulnerable class of consumers was despicable, deplorable and malicious so as to shock the conscience of every decent person so as to entitle plaintiff and the members of the classes identified herein to punitive damages.

109.   On March 6, 2003, and pursuant to *Civil Code* Section 1782(a), plaintiff requested defendants to cease their offending practices and provide remedy to all California class members.  That request was not accepted.

## THIRD CAUSE OF ACTION FOR FRAUD AGAINST ALL DEFENDANTS

110.   Plaintiff realleges and incorporated the allegations of paragraphs 1 - 88 in this complaint as though set forth here in full.

111.   Through Debticated, defendants made affirmative misrepresentations and concealed material facts from the plaintiff and the members of the classes.   These included, <u>inter alia</u>, that:

    (1)   That Debticated was a not for profit tax exempt institution, when in fact it is merely one arm of a single for profit enterprise consisting of, at least, Debticated, Infinity and Debtworks, and whose profits ultimately inure to defendants Pukke;

    (2)   That the monies the plaintiff and the members of the classes paid as "donations" to Debticated were never intended to be used in the manner specified in the Debticated form contract;

    (3)   That Debticated provided loan consolidation funding;

    (4)   That the ultimate goal of the Debticated program was to obtain such funding;

    (5)   That Debticated would "assist" customers in securing consolidation loan funding;

    (6)   That Debticated would provide "back end" services such as credit monitoring; and

    (7)   That if the customer succeeded in completing Debticated's six month program, they would likely be eligible for consolidation loan funding because of the close working relationship Debticated maintained with lending sources.

112. Debticated also made material concealments to the plaintiff and the members of the classes insofar as Debticated failed to provide the plaintiff and the members of the classes with the advisories that are mandated by the CROA.

113. These representations and concealments were fraudulent because: (1) Debticated is not a true non-profit tax exempt corporation, but is operated as a for profit entity for the benefit of the Pukke defendants; (2) Debticated does not provide consolidation loan funding; (3) the ultimate goal of the program is not for the customer to receive consolidation loan funding, but to garner the customer's fees, qua "donations;" (4) Debticated does not assist its customers in getting consolidation loans, but merely refers them to defendant Infinity so that the customer can pay an additional $25.00 application fee; (5) the promised back end services are not provided as advertised; and (6) defendants failed to disclose to Debticated's customers that only a very small minority of its customers would ever receive approval for a consolidation loan from Infinity even if they completed the full six months of the Debticated program.

114. As previously alleged, each of these false representations and concealments of material fact made as part of a common sales scheme knowingly practiced with uniformity by the defendants on all members of both classes by way of radio and print advertisements aimed at the general public and through intake counselors trained to provide a uniform "pitch" to sell their services.

115. The monies that the plaintiff and the members of the classes paid to Infinity were likewise obtained by false pretenses by Debticated/Infinity's failing to disclose to Debticated's customers that only a very small minority of its customers would ever receive approval for a consolidation loan even if they completed the full six months of the Debticated program and paid the "application fee" to Infinity. Indeed, since Infinity and Debticated are both operated by the same people, there was never any need for a separate application fee. Rather, Debticated could have told the customer from Debticated's knowledge of the customer's credit history whether the customer would be eligible for a loan.

116. Because all of the representations and concealments practiced on the plaintiff were part of a single and coordinated sales strategy directed at the public at large, as opposed to any one individual, plaintiff is entitled to a presumption that all of the members of both classes who paid money to Debticated and Infinity relied on the false representations and concealments practiced on them as a group by the defendants and that their reliance on the information provided to them was reasonable.

117. Defendants' conduct in knowingly doing the things alleged herein to the most vulnerable class of consumers was despicable, deplorable and malicious so as to shock the conscience of every decent person so as to entitle plaintiff and the members of the classes identified herein to punitive damages.

118. It is alleged on information and belief that all Doe defendants participated in the same species of fraud alleged herein.

119. As a direct and proximate result of the defendants' fraud as set forth in this complaint, plaintiff, and all of the members of the classes of similarly situated persons, have suffered damages and are entitled to the following relief from the defendants: Actual damages and/or restitution in an amount according to proof and punitive damages.

## FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS

120. Plaintiff realleges and incorporated the allegations of paragraphs 1 - 88 in this complaint as though set forth here in full.

121. Through Debticated, defendants made affirmative misrepresentations and concealed material facts from the plaintiff and the members of the classes identified herein. These included, inter alia:

(1)   That Debticated was a not for profit tax exempt institution, when in fact it is merely one arm of a single for profit enterprise consisting of, at least, Debticated, Infinity and Debtworks, and whose profits

1    ultimately inure to defendants Pukke;

2    (2)  That the monies the plaintiff and the members of the classes paid as
3         "donations" to Debticated would be used in the manner specified in
4         the Debticated form contract;

5    (3)  That: Debticated provided loan consolidation funding;

6    (4)  That the ultimate goal of the Debticated program was to obtain such
7         funding;

8    (5)  That Debticated would "assist" customers in securing consolidation
9         loan funding;

10   (6)  That Debticated would provide "back end" services such as credit
11        monitoring; and

12   (8)  That if the customer succeeded in completing Debticated's six
13        month program, they would be eligible for consolidation loan
14        funding.

15   122.  The defendants were negligent in making these representations which were
16   intended to induce reliance on the members of the classes because the representations
17   were not true and defendants had no reason to believe that they were true when made.
18   More specifically, (1) Debticated is not a genuine non-profit tax exempt corporation, but
19   was merely set up as such to avoid the CROA and to otherwise benefit the Pukke
20   defendants; (2) Debticated does not provide consolidation loan funding; (3) whether the
21   owners and operators of Debticated knew it or not, it was not in fact operating as a non-
22   profit corporation; (4) Debticated does not assist its customers in getting consolidation
23   loans, but merely refers them to defendant Infinity; (5) the promised back end services
24   are not provided as advertised; and (6) defendants failed to disclose to Debticated's
25   customers that only a very small minority of its customers would ever receive approval
26   for a consolidation loan from Infinity even if they completed the full six months of the
27   Debticated program.

28   123.  As previously alleged, each of these representations and concealments of

material fact made as part of a common sales scheme practiced with uniformity by the defendants on all members of both classes by way of radio and print advertisements aimed at the general public and through intake counselors trained to provide a uniform "pitch" to sell their services.

124. Because all of the representations and concealments practiced on the plaintiff were part of a single and coordinated sales strategy directed at the public at large, as opposed to any one individual, plaintiff is entitled to a presumption that all of the members of both classes who paid money to Debticated and Infinity relied on the false representations and concealments practiced on them as a group by the defendants and that their reliance on the information provided to them was reasonable.

125. It is alleged on information and belief that all Doe defendants participated in the same species of fraud alleged herein.

126. As a direct and proximate result of the defendants' negligent misrepresentations as set forth in this complaint, plaintiff, and all of the members of the classes of similarly situated persons, have suffered damages and are entitled to the following relief from the defendants: Actual damages and/or restitution in an amount according to proof and punitive damages.

## FIFTH CAUSE OF ACTION FOR UNFAIR COMPETITION AGAINST ALL DEFENDANTS

127. Plaintiff realleges and incorporates by reference each of the allegations contained in paragraphs 1 - 88 as though set forth in full.

128. Defendants' actions as heretofore alleged are "unlawful" and/or "unfair" and/or "fraudulent" business acts or practices as defined in *Business and Professions Code* Section 17200, et seq. and 17500, et seq.

129. Plaintiff further alleges that in addition to the previously alleged facts, defendant Debticated's representations to the public in the form of its advertising are unfair and deceptive insofar as they fail to apprise the public that signing up with Debticated and

1 allowing it to "negotiate" with creditors on the customer's behalf will itself have a negative

2 impact on the customer's credit.

3       130.   Plaintiff, as representative of the public and the classes herein identified,

4 requests the following relief pursuant to *Business and Professions Code* Section 17204:

5       (1)   An order enjoining Debticated from continuing to represent itself as

6             a non-profit tax exempt organization;

7       (2)   An order enjoining Debticated from collecting advance fees not

8             authorized by the provisions of the CROA;

9       (3)   An   order   enjoining   Debticated   from   making   misleading

10            representations to the public;

11      (4)   An order enjoining defendant Infinity from retaining any part of the

12            $25.00 application that it charges to any consumer to whom it does

13            not actually provide consolidation loan funding;

14      (5)   An order enjoining Infinity from making false or misleading

15            statements regarding the availability of consolidation loan funding;

16      (6)   An order for the restitution by all defendants of all money paid by

17            the classes to Debticated and Infinity within the past four years and

18            for an order that the defendants use all reasonable means to identify,

19            locate and repay such funds to each customer of Debticated and/or

20            Infinity and/or any other organization owned and controlled by the

21            Pukke defendants that was part of the same commercial enterprise

22            set forth in this complaint.  Plaintiff further requests that this Court

23            exercise it inherent power to supervise those efforts until they are

24            completed;

25      (7)   An order that Debticated (and any other related entity that provides

26            similar debt-related services and which advertises to the public)

27            conspicuously include in all of its advertisements a warning of the

28            potential consequences to the customer's credit that may result from

engaging the company; and

(8) Attorneys' fees pursuant to California *Code of Civil Procedure* Section 1021.5.

## SIXTH CAUSE OF ACTION FOR
## UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

131.   Plaintiff realleges and incorporated the allegations of paragraphs 1 - 88 in this complaint as though set forth here in full.

132.   It is alleged on information and belief that all Doe defendants participated in the same wrongful conduct and have been unjustly enriched thereby.

133.   As a result of the facts alleged herein, defendants received a benefit from the plaintiff and the members of the classes alleged herein and have unjustly retained that benefit at the expense of plaintiff and the members of the classes alleged herein.

## SEVENTH CAUSE OF ACTION FOR
## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

134.   Plaintiff realleges and incorporated the allegations of paragraphs 1 - 88 in this complaint as though set forth here in full.

135.   As a result of the nature of the confidential financial services defendants were promising to perform for the plaintiff and the members of the classes alleged herein, plaintiffs were required to share their confidential financial information and to place their trust in Debticated.  There, thus existed a special relationship between them sufficient to create a fiduciary duty.

136.   Through the actions alleged herein, defendants breached that duty and as a result of those multiple breaches, plaintiff and the members of the classes alleged herein have suffered damages.

137.   It is alleged on information and belief that all Doe defendants participated in the same species of fiduciary breach alleged herein.

138.   Defendants' conduct in knowingly doing the things alleged herein to the most vulnerable class of consumers was despicable, deplorable and malicious so as to shock the conscience of every decent person so as to entitle plaintiff and the members of the classes alleged herein to punitive damages.

## EIGHTH CAUSE OF ACTION FOR
## CONSTRUCTIVE TRUST AGAINST ALL DEFENDANTS

139.   Plaintiff realleges and incorporated the allegations of paragraphs 1 - 88 in this complaint as though set forth here in full.

140.   As a result of the fraud, breaches of fiduciary duty and other wrongful conduct alleged herein that was practiced against plaintiff and the members of the classes identified herein, defendants improperly acquired title to funds and property that is traceable to the amounts plaintiff and the members of the classes paid to Debticated or Infinity and to which they have a right.

141.   The defendant's gain of the res in violation of a trust was wrongful and justifies the imposition of a constructive trust against all property of the defendants that is fairly traceable to their wrongful conduct.

WHEREFORE, Plaintiff prays for herself and for each of the members of the classes identified herein and on behalf of the general public (as to the fifth cause of action only) for the following relief:

**On the First, Third, Fourth and Seventh causes of action:**

(1)   Actual damages according to proof;

(2)   Punitive damages;

(3)   Attorneys' fees;

(4)   Costs of suit;

(5)   Such other and further relief as this Court deems appropriate.

**On the Second cause of action:**

    (1)    Actual damages according to proof;

    (2)    Punitive damages;

    (3)    Attorneys' fees;

    (4)    Statutory damages;

    (5)    An order enjoining Debticated (and any other ostensibly non-profit tax exempt organization that is part of the single commercial enterprise alleged herein) from continuing to represent itself as a non-profit tax exempt organization;

    (6)    An order enjoining Defendants from operating outside the provisions of the CLRA;

    (7)    An order enjoining defendants from making misleading representations to the public concerning the availability of consolidation loan funding;

    (8)    An order enjoining defendants from representing that they will perform services that they does not perform;

    (9)    An order enjoining defendant Infinity from retaining any part of the $25.00 application that it charges to any consumer to whom it does not actually provide consolidation loan funding;

    (10)    An order enjoining defendants from making false or misleading statements regarding the availability of consolidation loan funding; and

    (11)    An order for the restitution by all defendants of all money paid by the classes identified herein to Debticated and Infinity within the past three years;

    (12)    Costs of suit;

    (13)    Such other and further relief as this Court deems appropriate.

**On the fifth cause of action:**

    (1)    An order enjoining Debticated (and any other ostensibly non-profit tax exempt organization that is part of the single commercial enterprise alleged

1    herein) from continuing to represent itself as a non-profit tax exempt

2    organization;

(2)    An order enjoining Debticated (and any other ostensibly non-profit tax

exempt organization that is part of the single commercial enterprise alleged

herein) from collecting advance fees not authorized by the provisions of the

CROA;

(3)    An order enjoining Defendants from making misleading representations to

the public concerning the availability of consolidation loan funding or the

services it provides;

(4)    An order enjoining defendant Infinity from retaining any part of the $25.00

application that it charges to any consumer to whom it does not actually

provide consolidation loan funding;

(5)    An order enjoining Infinity from making false or misleading statements

regarding the availability of consolidation loan funding;

(6)    An order that Debticated and any other ostensibly non-profit organization

operating as part of the single commercial enterprise alleged herein comply

with all applicable provisions of the CROA in soliciting and signing up

customers;

(7)    An order for the restitution by all defendants of all money paid by the

classes identified herein to Debticated (and any other ostensibly non-profit

tax exempt organization that is part of the single commercial enterprise

alleged herein) and Infinity within the past four years and for an order that

the defendants use all reasonable means to identify, locate and repay such

funds to each customer of Debticated and/or Infinity and/or any other

organization owned and controlled by the Pukke defendants that was part of

the same commercial enterprise set forth in this complaint.  Plaintiff further

requests that this Court exercise it inherent power to supervise those efforts

until they are completed;

(8)  An order that Debticated (and any other related entity that provides similar debt-related services and which advertises to the public) conspicuously include in all of its advertisements a warning of the potential consequences to the customer's credit that may result from engaging the company; and

(9)  Attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5; and

(10)  Such other and further relief as the Court deems appropriate.

**On the sixth cause of action:**

(1)  Actual damages according to proof

(2)  Costs of suit; and

(3)  Such other and further relief as the Court deems appropriate.

**And on the eighth cause of action:**

(1)  For the imposition of a constructive trust against all property of the defendants that is fairly traceable to their wrongful conduct;

(2)  Costs of suit;

(3)  Attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5; and

(4)  Such other and further relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED FOR ALL CLAIMS.

Dated:  August 19, 2003

MORRIS, POLICH & PURDY, LLP

By: _____
David J. Vendler

Attorneys for Plaintiff, ALYSSA POLACSEK, individually, on behalf of the classes of similarly situated persons, and as a representative of the general public

DJV1097.DOC

45

# DECLARATION OF DAVID J. VENDLER RE VENUE

I, David J. Vendler, declare and say as follows:

1.    I am an attorney duly licensed to practice before the United States District Court for the Central District of California and am a partner in the law firm of Morris, Polich and Purdy, LLP, attorneys of record for the plaintiff herein.  I have personal knowledge of the facts stated in this declaration and if called to testify thereto, I could and would do so competently.  I make this declaration on behalf of plaintiff pursuant to California *Civil Code* Section 1780(c).

2.    Defendant Debticated Consumer Counseling, Inc. does business in California and the specific transaction alleged in the plaintiff's complaint occurred in Los Angeles County, California.  And, since a federal cause of action is alleged, the Central District of California is the proper venue for this action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed in Los Angeles on August 19, 2003.

By: _____
David J. Vendler